IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT MARCHIONDA, SR., )
      Plaintiff, )
)
  v. ) Civil Action No. 2:15-323
)
PRECISION KIDD STEEL CO., INC., )
      Defendant. )

# MEMORANDUM OPINION[1]

ROBERT C. MITCHELL, United States Magistrate Judge.

## I. INTRODUCTION

Presently before the Court is Defendant Precision Kidd Steel Co., Inc.'s ("Defendant" or "Precision") Motion for Summary Judgment [ECF No. 26]. For the reasons that follow, Defendant's motion is denied.

## II. BACKGROUND

### A. Procedural Background

Plaintiff Robert Marchionda, Sr. ("Plaintiff") initiated this action on March 9, 2015, alleging that he was wrongfully terminated from employment on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (Count I) and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq.* (Count III). Plaintiff also alleges that Defendant refused to rehire him in retaliation for exercising his rights under the ADEA by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") following his termination (Count II). Discovery has now closed, and on February 29, 2016 Defendant filed its Motion for Summary Judgment [ECF No. 26] with brief in

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

support [ECF No. 28]. Plaintiff has filed a brief in opposition [ECF No. 31], Defendants have replied [ECF No. 37] and Plaintiff has filed a sur-reply [ECF No. 41]. The parties have also filed concise statements of material facts and appendices in support of their various positions [ECF Nos. 27, 32, 33, 34, 38, 42]. That matter is now ripe for disposition.

We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

**B. Factual Background**

The following facts are either undisputed or viewed in the light most favorable to Plaintiff, the non-moving party.

Defendant Precision is a manufacturer of precision cold-drawn/cold-finished steel bar, wire, and special profile steel shapes. Plaintiff's Response To Defendant's Concise Statement Of Undisputed Material Facts [ECF No. 32 at ¶ 1]. The company has two manufacturing facilities located in Aliquippa and Clinton, Pennsylvania. [ECF No. 32 at ¶ 2]. Precision's hourly production employees at both facilities are represented, for collective bargaining purposes, by an independent labor Union known as the Precision Kidd Employees Union ("the Union"). [ECF No. 32 at ¶ 2]. Precision's supervisory personnel, administrative employees, and clerical workers, plant guards, and janitorial employees are not part of the bargaining unit that the Union represents. [ECF No. 32 at ¶ 5]. Currently, there are roughly 20 non-bargaining unit employees and 53 bargaining unit employees at the Aliquippa and Clinton facilities. [ECF No. 32 at ¶ 6]. Of Precision's 53 bargaining unit employees, 42, or 79%, are age 40 or older. Thus, only 11 of Precision's bargaining unit employees, representing 21% of the Unionized workforce, are outside the protected age classification, 14 of Precision's bargaining unit employees, constituting 26% of the Union workforce, are age 50 or older, 19 bargaining unit employees, or 36% of the Union workforce, are age 60 or older. See Collective Bargaining Unit Seniority List.

[ECF No. 32 at ¶ 7].

Precision initially hired Plaintiff on July 2, 1988. [ECF No. 32 at ¶ 8]. Marchionda, whose date of birth is April 19, 1944, was 43 years old at the time of his hire. [ECF No. 32 at ¶ 9]. Marchionda worked as an hourly production worker, initially as a pointer at Precision's Clinton plant, and subsequently in the bar pickler position at the Aliquippa facility. [ECF No. 32 at ¶ 10]. As an hourly production worker, Marchionda was part of the collective bargaining unit represented by the Union. [ECF No. 32 at ¶ 11]. Most recently, Marchionda reported to Operations Manager Robert Martella ("Martella"), who started working for Precision on August 4, 2004. [ECF No. 32 at ¶ 12].

In April of 2009, Marchionda voluntarily retired from Precision, three days before his 65th birthday. Marchionda testified that "[t]ruthfully the reason I retired is I was adopting an African-American child. If it wasn't for that, I would have never retired. I'd be working right now."). [ECF No. 32 at ¶ 14]. Marchionda admits that prior to his voluntary retirement in April of 2009, he never had any problems with Martella, and had no reason to believe that Martella discriminated against any employee on the basis of age. [ECF No. 32 at ¶ 15].

Later, when Martella learned that Marchionda was looking for work to supplement his retirement income, he contacted Marchionda and offered him work on a temporary basis, training other employees on the bar pickler job, and performing other maintenance and janitorial duties as needed. [ECF No. 32 at ¶ 21]. The parties dispute whether Martell explained to Marchionda that the position would be temporary and not part of the bargaining unit. Martella offered Marchionda the same pay rate that he had earned prior to his retirement. Marchionda and his wife would also continue to receive healthcare benefits. Marchionda, however, would no longer be eligible to receive incentive pay, which is only available to Union employees. [ECF

No. 32 at ¶ 23]. Marchionda accepted Martella's offer to return to work, and he was rehired effective September 7, 2010. Marchionda was 66 years old at the time of his rehire. [ECF No. 32 at ¶ 24]. Martella, whose date of birth is September 18, 1959, is currently 56 years old. [ECF No. 32 at ¶ 13].

After he finished training another employee on the bar pickler job, which took approximately four months, Precision's Chief Executive Officer Dom Lea and Martella asked Marchionda if he was interested in staying on to perform janitorial and maintenance duties. [ECF No. 32 at ¶ 25]. Plaintiff agreed to continue his employment, and performed tasks such as painting, cutting the grass and sweeping. Aside from these tasks, Martella told Plaintiff to perform Union work such as banding coils, bar pickling, tractor driving, pointing coils and other jobs which he filled. [ECF No. 32 at ¶ 26]. Lea acknowledged that it was a "poor management decision" to allow Marchionda to perform bargaining unit work during the time when he was not a Union employee. [ECF No. 32 at ¶ 28].

Approximately a year and a half into Marchionda's second period of employment, Union representatives began complaining to management about Marchionda's performance of bargaining unit work, although Marchionda disputes that he personally heard the complaints. [ECF No. 32 at ¶ 29]. According to Marchionda, he told Martella (who said the Union was complaining) to put him in the Union to take care of the issue. (Marchionda 36, App. Ex. 3). Martella gave Marchionda no answer, but nonetheless continued to direct Marchionda to perform Union work. [ECF No. 33 at ¶¶ 3, 40]. Martella recalls that he did not reinstate Marchionda to the bargaining unit in response to the Union's complaints because he understood that Marchionda did not want to be classified as a Union employee. [ECF No. 32 at ¶ 30]. Union officials (President Richard Yacoviello and Vice President Bruce Carpenter) also understood that

Marchionda was not interested in Union membership during his second period of employment. [ECF No. 32 at ¶ 33]. Plaintiff, however, has testified that he asked Martella and the Union officials multiple times if he could join the Union. [ECF No. 32 at ¶ 30]. Yacaviello told Marchionda that he asked Martella several times about putting Marchionda in the Union but Martella never responded with an answer. [ECF No. 33 at ¶ 33].

In September, 2013, Precision hired three hourly production employees, each of whom was younger than Marchionda, in bargaining unit positions. [ECF No. 32 at ¶ 31]. On November 14, 2013, a Union representative complained to Martella that Marchionda had been observed performing Union-only work, and Martella decided to terminate Marchionda, ran down the hall and said to Plaintiff, "I'm tired of hearing the Union guys complaint about you doing Union work. You're done." [ECF No. 32 at ¶¶ 34, 35]. Marchionda was 69 years old at the time he was separated from employment. [ECF No. 32 at ¶ 36]. On November 22, 2013, Plaintiff filed a timely charge of discrimination with the EEOC alleging age discrimination. [ECF No. 34-5]. Defendant hired two significantly younger individuals a few weeks after firing Plaintiff (Seniority/Birth Date List, App. Ex. 1; Marchionda 68-69, 72, App. Ex. 3).

The record contains a document entitled "Seniority/Birth Date List" which specifies the birthdate of all employees and their current age; it includes Marchionda and was used by Martella on a daily basis. [ECF No. 33 at ¶¶ 58, 59]. Neither Martella nor Lea could explain the purpose for having the employees' birthdates on the seniority list. [ECF No. 33 at ¶ 60]. In addition, Section XXI, Paragraph H of the Union contract states, "The company shall have the right, at its option, to terminate the employment of an employee upon such employee's reaching the age of 70 years." (Union Contract Section XXI, Paragraph H, App. Ex. 9; Lea 69, App. Ex. 2). [ECF No. 33 at ¶ 62].

Marchionda claims that he was wrongfully terminated on the basis of age. Specifically, Marchionda claims that Martella prevented him from joining the Union during his second period of employment, then used the fact that Marchionda was not a Union employee as the reason for terminating him. Martella called Marchionda "old man" all the time after he returned to work for his second period of employment. (Marchionda 58-59, 60, 70, 89, App. Ex. 3). Martella told the Union president, Rick Yuciovello, that there is more work coming but that Marchionda would not perform any of it because he's "getting old" and is "not going to be around much longer." (Marchionda 54-56, App. Ex. 3) [ECF No. 32 at ¶ 39]. Plaintiff also testified that the reason he believed Martella refused to put him in the Union because of his age was that Martella "hired two other guys while I was working there" and did not give Plaintiff the opportunity to get one of the jobs that he gave to those two younger guys. (Marchionda 52, App. Ex. 3). Plaintiff has stated that Martella would not put him in the Union even though he asked. (Marchionda 53, App. Ex. 3).

In addition to his claim of age discrimination, Marchionda also brings a retaliation claim, alleging that Precision refused to rehire him following his termination because he had exercised his rights under the Age Discrimination in Employment Act by filing a charge of discrimination with the Equal Employment Opportunity Commission. Plaintiff contends he verbally applied for positions within Defendant by asking to be put in the Union. (Marchionda 111-112, App. Ex. 3). In addition, Plaintiff never used a formal application process when Defendant hired him in 1988; he did not fill out a job application and did not have an interview. (Marchionda 13-14, App. Ex. 3). Nor did Plaintiff complete an application or undergo an interview in order for Defendant to hire him the second time; Robert Martella, Plant Manager, called him and asked him if he was interested in returning to work. (Martella 26-27, App. Ex. 4).

Defendant moves for summary judgment, arguing there is no genuine issue of material fact that plaintiff is not entitled to relief as to all Counts in the Amended Complaint.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV. DISCUSSION

A. **Counts I and III: Age Discrimination in Termination**

Plaintiff contends that his employment with Defendant was wrongfully terminated based upon his age.[2] Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Because Plaintiff has not provided direct evidence of discrimination, our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973) (the "McDonnell Douglas analysis"). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the McDonnell Douglas analysis in ADEA cases involving indirect evidence).

Under the McDonnell Douglas analysis, once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas*

---

[2] There is no need to differentiate between Plaintiff's Federal discrimination claims and PHRA claims (Count III) because, for our purposes, the same analysis is used for each. *See, e.g., Simpson v. Kay Jewelers,* 142 F.3d at 643-644 & n.4; *Jones v. School District of Philadelphia*, 198 F.3d 403, 410-411 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth,* 609 A.2d 804, 805 (Pa. 1992).

*Corp. v. Green*, 411 U.S. at 802. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. at 253).

Plaintiff, therefore, bears the initial burden of establishing a *prima facie* case of discrimination. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). To establish a *prima facie* case, Plaintiff must demonstrate that: (1) he is a member of the protected class, *i.e.* at least 40 years of age; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) that he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001).

The Court finds that Plaintiff has established a *prima facie* case of discrimination, as he was over 40 years old, was qualified for the position, and was fired. (Precision does not contest that Plaintiff has satisfied the first three elements of a prima facie case. [ECF No. 28 at 17].) Marchionda asserts that he can meet the fourth prong based on various facts in the record. The company hired three substantially younger individuals a few weeks before firing Marchionda. Defendant could have easily remedied the Union's concern by permitting him to join the Union,

which he repeatedly asked for.  Also, in January of 2014, the Company hired two younger hourly production employees in bargaining unit positions.  Moreover, Martella made ageist comments about Marchionda, call him "old man."  These facts, when viewed in the light most favorable to Marchionda, the non-moving party, are sufficient to support the fourth element of the prima facie case that he was the victim of age discrimination.

The burden shifts to Defendant to offer a legitimate non-discriminatory reason for terminating Plaintiff. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Simpson v. Kay Jewelers*, 142 F.3d at 644 n.5. This burden is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d at 763); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

In this instance, Martella testified that he decided to end Marchionda's second period of employment due to the Union's continual complaints about Marchionda's performance of bargaining unit work, and based on his understanding that Marchionda was not interested in rejoining the Union.  The court finds that Defendant has offered a legitimate non-discriminatory reason for terminating Plaintiff sufficient to continue with the McDonald Douglas analysis.

The burden shifts back to Plaintiff to show that Defendant's articulated reasons for his termination are merely a pretext for age discrimination. An employee may demonstrate that his employer's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a factfinder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a "but for" cause of the adverse employment action.

*Abels v. Dish Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Fuentes v. Perskie*, 32 F.3d at 764); *see also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-178 (2009). Evidence undermining an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

In order to discredit Defendant's proffered justification under the first prong of *Fuentes*, Plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and ultimately infer that Defendant did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765. If Plaintiff's evidence rebutting Defendant's proffered reason permits a factfinder to conclude that such reason (or reasons) was either a "post hoc fabrication" or otherwise did not actually prompt the employment action, then summary judgment is inappropriate. *Fuentes v. Perskie*, 32 F.3d at 764.

The record evidence supports the following factual dispute as to this first prong. There are conflicting and contradictory facts as to who made the decision to fire Marchionda. Lea testified that he learned about the decision to fire Marchionda after it had happened, yet in answers to interrogatories, defendant answered that Martella made the decision in coordination with Lea. This inconsistency, and others, permit a fact finder to conclude that that the articulated reasoning for discharging Marchionda was pretextual. Moreover Lea admitted that he disagreed with the decision to terminate Marchionda, even though answers to interrogatories provided by defendant answered there were no individuals who expressed any disagreement with the decision.

Alternatively, Plaintiff must show that age-based discrimination was a "but-for" cause of Defendant's decision to terminate him. To meet this burden, Plaintiff "cannot simply show that [Defendant's] decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d at 765. The question is whether Defendant was motivated by a discriminatory animus, not whether it was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). *See also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason."). "To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers, Div. of Sterling,*, 142 F.3d at 644-45.

In support of his contention that discrimination was the "but-for" cause of Defendant's decision to terminate him, Plaintiff directs the Court to certain facts supported by the record. Martella called Marchionda "old man" repeatedly after he returned to work for his second year of employment, defendant hired two younger workers before Marchionda's termination rather than offering a position to Marchionda, and Martella refused to put Marcionda in the Union despite Marchionda's requests that he do so. In addition, Martella told Yuciovello that although there was more work coming, Marchionda would not perform any of it because he's "getting old" and is "not going to be around much longer." Martella fired Marchionda two weeks later. Moreover, the record evidence supports the contention that Martella was aware of the employee's age because of the seniority/birthdate list, and that the bargaining unit contract also

12

placed an age-related condition of employment. WE find that such evidence has sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision, and hence, the motion for summary judgment will be denied.

Furthermore, we note that Defendant argues that certain comments made constitute stray remarks and are not probative of discrimination. In this context the Court of Appeals for the Third Circuit has considered the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." *Parker v. Verizon Pa., Inc.*, 309 Fed. Appx. 551, 558-559 (3d Cir. Pa. 2009) (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)); *see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997). "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Fuentes v. Perskie*, 32 F.3d at 767 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d at 545). In the unique context of this case the statements described herein ("old man" and "not going to be around much longer") could be construed as evidence of an age-related animus rather than mere stray remarks because they were directly related to the plaintiff's job and were made by a decisionmaker within a few months of plaintiff's termination.

Accordingly, the Court finds that Plaintiff's age discrimination claims under the ADEA and PHRA (Counts I and III) may proceed to trial.

B. **Count II: Retaliation**

At Count II Marchionda asserts an ADEA retaliation claim, alleging that defendant wrongly failed to hire him in January 2014, a few weeks after it fired him. Like the age discrimination claims, the McDonnell Douglas burden shifting framework is applied to analyze retaliation claims. *See Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192–93 (3d Cir. 2015) (ADEA and PHRA retaliation claims evaluated under McDonnell Douglas ). A plaintiff makes out a prima facie case of retaliation by showing that: (1) she engaged in protected activities; (2) the employer took an adverse action against her; and (3) a causal link exists between the employee's protected activities and the employer's adverse action. *Id*. (citing *Marra v. Phila. Hous. Auth*., 497 F.3d 286, 300 (3d Cir. 2007) (further quotation omitted)). Where the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show: 4) that she applied for an available job; and 5) that she was qualified for that position. *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D. D.C. 2003). The McDonnell Douglas burden shifting procedures noted above remain the same in this context—with the employer responding to the prima facie case by producing its legitimate nondiscriminatory reasons for the decision and the plaintiff countering with her evidence of pretext. *Id.* All the while, it remains the plaintiff's burden of persuasion to demonstrate that she was not hired due to unlawful retaliation. *Id*.

Defendant herein submits that Marchionda cannot meet the fourth element of his prima facie case, i.e. that he applied for an available job, because he never formally reapplied for employment with Precision after November of 2013. In response, plaintiff argues that the formal application for a job is not necessary to establish a prima facie case of discriminatory refusal to hire under Title VII if the plaintiff did everything reasonably possible to make known

14

to the employer the plaintiff's interest in applying for a job, *E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 348–49 (3d Cir. 1990), or that he "would have applied but for" the defendant's discriminatory practice, or that he "reasonably believed that a formal application would be futile." *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 907 F.2d 1408, 1414 (3d Cir. 1990). The evidence of record shows that Marchionda never used a formal application process when hired by Defendant previously. Plaintiff also cites to record evidence that he repeatedly made Defendant aware he wanted to join the Union, that Martella, the employee who had the power to classify plaintiff as an employee on the Union track, was aware of plaintiff's desire to join.

Therefore, because there appears to be a genuine issue of material fact as to whether defendant retaliated against Marchionda, summary judgment will be denied as to Count II.

## V. CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is denied. An appropriate Order follows.

Dated: June 28, 2016            /s/ *Robert C. Mitchell*
                                United States Magistrate Judge

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT MARCHIONDA, SR., | ) | |
| Plaintiff, | ) | Civil Action No. 2:15-323 |
| | ) | |
| v. | ) | |
| | ) | |
| PRECISION KIDD STEEL CO., INC., | ) | |
| Defendant. | ) | |

## O R D E R

AND NOW, this 28th day of June, 2016, after consideration of Defendant Precision Kidd Steel Co., Inc.'s Motion for Summary Judgment [ECF No. 26], it is HEREBY ORDERED that said motion is **DENIED**.

IT IS FURTHER ORDERED THAT a status conference in this case is scheduled for July 13, 2016 at 1:00 p.m.

                                                                             s/ *Robert C. Mitchell*
                                                                             ROBERT C. MITCHELL
                                                                             United States Magistrate Judge

cc:    *Counsel for Plaintiff*
       Colleen Ramage Johnston, Esquire
       Nikki Velisaris Lykos, Esquire
       Johnston Lykos, LLC
       525 Willliam Penn Place
       28th Floor
       Pittsburgh, PA 15219

       *Counsel for Defendant*
       Avrum Levicoff, Esquire
       Sunshine R. Fellows, Esquire
       The Levicoff Law Firm, P.C.
       Centre City Tower
       650 Smithfield Street
       Suite 1900
       Pittsburgh, PA 15222-3911